Bureau of Prisons Trust Fund Manager, et al. Mr. Satton for the amicus curiae, Mr. Abdi Bonojo for the appellees. Good morning. May it please the court, Michael Satton, counsel for amicus in favor of appellant. I'd like to reserve two minutes for rebuttal. In our brief, we addressed three issues, sovereign immunity, exhaustion under the Prison Litigation Reform Act, and the reasonableness of one FOIA search. During my argument, I'd like to focus mostly on the exhaustion issue, but before I do that, I want to briefly address the other two issues. On the issue of sovereign immunity, the district court dismissed Mr. Debrew's complaint on sovereign immunity grounds based on its belief that it was a suit only for money damages. But Mr. Debrew's suit also sought equitable relief, and sovereign immunity is waived for suits seeking equitable relief. On FOIA, on the FOIA issue, the district court relied on the affidavit of Wilson Moore, and the law in this jurisdiction is clear that an affidavit must be reasonably detailed, which means that it must include the search terms and the type of search performed, and it must state that all files likely to contain responsive materials were searched. And that did not happen here. The declaration of Wilson Moore, the third declaration of Wilson Moore… This is for the documents relating to the 408? Is it called Code 408? Correct. Code 408 is the term. What about the memos for the DNA Act? What's your response to… you all didn't pursue them. You didn't follow up, right? We didn't pursue that one, right. Are you abandoning it altogether? Well, we're presenting the arguments we think are the clear-cut winners for Mr. Debrew. He certainly raised that one in his own brief, so it's still an issue. I mean, there'd be nothing preventing him from asking for them tomorrow, right? That's correct. That's always the case in FOIA. If the case gets dismissed, he can always file another FOIA complaint. But at least with respect to Code 408, we are very much presenting that argument. And the reason is, as I said, that the affidavit that was presented, which is the only thing the district court relied on, it doesn't state the search terms that were used… It just identified the people involved in the search, right? Right. Just who did it, why they did it, and what they found. But they never state how they went about doing those searches. So clearly the FOIA search was not reasonable with respect to Code 408. May I ask you a question? Can Mr. Debrew be appointed counsel when he can't proceed, for the certification purposes, when he can't proceed in form apophoris? Well, I think appointment of counsel is always an appropriate possibility, and I think there's a number of… Well, he three strikes out. He can't succeed under the form apophoris, right? He can't be appointed counsel. Doesn't that take care of the class certification issue? I think that's… As I understand the local rules on appointment of counsel, there's a number of factors to consider. One of them is the inability of the pro se party to retain counsel. It's a question of whether or not the three strikes out would apply to that. But that's not a dispositive factor. There are other factors at issue under that standard. The nature and complexity of the case, the merit of the pro se party's claims, whether the interest of justice would be served by the appointment of counsel. So we would submit that… So you think it's an open question whether you can be appointed counsel, but not under inform apophoris? Correct. I see. We do. And interestingly enough, the district court did not deny appointment of counsel in this case. It initially did, but it did so in an order in which the court also dismissed the case, but later vacated that order. So as the record stands below right now, the court hasn't ruled on his appointment of counsel. But our position is once this case gets remanded, in our view it should be remanded, then the district court should consider the appointment of counsel based on those four factors that the local rules provide. And then once local counsel is provided to him, that counsel can decide whether or not class certification should be pursued, and the district court can make that determination. With respect to the exhaustion issue I'd like to spend the rest of my time on, the district court held that Mr. DeBrew failed to exhaust remedies for two of his claims, the interest retention on the trust fund accounts and prices of goods. I would point out, because this is where the government and we disagree, the district court did not rule that he had failed to exhaust on the Code 408 claim. We pointed that out in a couple of our footnotes in our brief, but we did not address the merits of exhaustion with respect to Code 408 because the district court, rightly so, did not find that there was a failure to exhaust. But on the other two claims, the district court found a failure to exhaust based on two reasons. What did the district court say about 408? It didn't address it. Nothing. That's right. And I think the record, though, shows for Code 408 that the general counsel below had addressed the merits and denied it on the merits. So it makes sense that the district court would not have addressed that issue, would not have found a failure to exhaust with respect to Code 408. It was only, I believe, in a declaration of the government that they determined that there was a failure to exhaust for Code 408. The district court didn't make that finding, and the finding that the determination by the government at the end is simply wrong because the DOP had reached the merits on that particular claim. So wouldn't it have been appropriate for the district court to reach the merits? Reach the merits of the issue or the exhaustion issue? Well, on Code 408, just help me on this, it doesn't appear anywhere in the opinion. Is that correct? Code 408 does not appear anywhere in the district court's opinion, does it? With respect to the exhaustion issue, that's correct. Okay. And does it appear with respect to anything else? I think it will certainly address with respect to the 408 issue. Okay. Right. Okay. And then presumably it's part of the court's determination that there is sovereign immunity and it applies to Code 408 as well. Correct. But there was no explicit finding I can see. The district court did not say with respect to the Code 408 claim it had been exhausted. The court, in addressing the exhaustion issue, only specifically addressed those claims in which it specifically found that it was a failure to exhaust. And the record is clear down below that the general counsel of the DOP had reached the merits with respect to that claim. On the two other claims, the district court gave two reasons. One, that his appeal to the general counsel was late. And second, that he failed to attach the regional director's response. And the district court was wrong with respect to both of those. As to lateness, the government, in their brief, concedes, quote, the DOP had excused his untimeliness. The government had not pursued that argument before the district court, even though the district court made its finding. And that makes sense because the DOP's grievance system in stating the timelines allows flexibility. But there's 30 days to file that appeal. It says that those deadlines, those timelines, can be extended when the inmate gives a valid reason for the delay. And that's what happened in this particular case. After Mr. DeBrew filed his first appeal to the general counsel and it was rejected, in his subsequent appeals he explained the reason that why he filed it when he did. And then after that, the DOP, though they continued to reject his appeal, they did not do so based on any timeliness issue. So timeliness is not an issue here, as the government themselves recognize. So the real issue here is whether or not Mr. DeBrew's failure to attach the regional director's responses to his fourth level of appeal amounts to exhaustion or not. And in this case, it's not really a failure to do so, it's his inability to do so. He was unable to attach those responses, and as a result, those administrative remedies were not available to him. If I could just walk the court through the facts that are relevant here. After Mr. DeBrew filed his BP-10 appeal, the third level appeal, he'd gone to the first level without any incident, the regional director said they'd respond by early October. On September 15, 2007, Mr. DeBrew got what appeared to be two responses from the regional director. And he got them just as he was about to board the bus to go to another prison. Now, he received two letters in the mail. He had filed six claims. So at that point, he didn't actually know which of the two claims he had just received a response from. He didn't know if it were the two that we're discussing here or four other ones. In any event, knowing that he could not take them with him on the bus, he returned them to the mailroom or gave them back to the person who had given them to him because he knew that under prison regulations, they should be forwarded to the next location where he was going, to the next prison. He takes the bus. He gets there. He never received those documents. So eventually, he files his BP-11 appeal, his appeal to the general counsel, without those documents. He tried to obtain those forms, but he was unable to do so. And after that first appeal was rejected, one reason was the untimeliness, but the other one, the fact that he didn't attach those regional director responses, he filed a second appeal, and he explained the circumstance that he didn't have those documents. Meanwhile, he is seeking all along to try and obtain those documents. He wrote letters back to the mailroom at the prison he was at, to the administrative remedy index clerk, the person who's in charge of these forms, trying to get them, the general counsel's office, the warden's office. He's doing everything in his power to try and obtain those documents, but he never does. So what we have here is not an individual who's trying to bypass the regulation, who's trying to go to court before he's supposed to, or who is negligent. We have an individual who is trying to comply with the regulation, and through no fault of his own, he was unable to do so. And so for that reason, the administrative remedy was simply not available to him, and he did not fail to exact it. And there's another case— So is the government's response only that he received those two letters? That seems to be their—as I understand their response, they claim he received them, which is wrong for two reasons. First of all, it's not clear that he actually received the two that pertain to this case, because we don't know if it was these two or the other four that he had filed about. But it's also wrong because even if he had received those and opened them up, as the government seems to think that he should have, because he was going on the bus at that moment, he couldn't take them with him. So the result would have been the same. Namely, he would not have been in a position to attach them to his form, to his appeal. Notably, the government never says in their brief what Mr. DeBrew should have done, given that he received them on the very moment that he's boarding the bus and was not allowed to take them with him. And the case before the court now is actually very similar to another case, Risher v. Lappin, a Sixth Circuit case. And the reason those cases are so similar is that, like Mr. DeBrew, the individual had gone through the first three levels of appeal without instance. He filed his fourth appeal to the General Counsel without the Regional Director's response, because he didn't receive them. And in that case, the Sixth Circuit said he had exhausted, he did everything he was supposed to do. The court used this language. Risher did not attempt to bypass the administrative grievance process detailed above. He affirmatively endeavored to comply with it. And that's what we have here, Mr. DeBrew affirmatively attempting to comply with the procedures. And in fact, this case is easier to decide than that case, because that individual, Risher, he went straight to federal court after his first appeal was rejected. He never tried to get those Regional Director's responses, even though the Sixth Circuit noted that he might have been able to do so. Here, Mr. DeBrew tried very hard to do that. In fact, I think he used the language in his brief at some point, which I think is correct, but he was relentless in trying to get those forms. He was unable to do so. So finally, after three levels of appeal to the General Counsel, he brought his suit here to federal court. Could I ask you, the government raises a standing issue in its brief. Yes. Do you want to respond? Sure. Mr. DeBrew does have standing to present his claims. Constitutional standing requires three things, a concrete injury that's traceable to government and can be redressed by a favorable decision. With respect to Code 408, he had concrete injuries, and there were three of them that were set forth in his complaint. He received disciplinary violations, he was ordered to remove his webpage, and he couldn't use the mail with respect to his books or manuscripts. So he clearly had injury with respect to Code 408. For the one telephone prices and markups, he says that inmates are subject to high prices, high markups, high phone rates, high handling fees, and so forth. Mr. DeBrew is an inmate at the prison. It's not as if this is a case that's being brought by some nonprofit organization on behalf of inmates. He is in prison subject to those policies. And the same thing with the interest and trust fund accounts. He states that the Bureau of Prisons is taking inmates' interest and doing so without due process of law. So could I ask you, and I'll ask the government as well, do the Bureau of Prisons regulations establish trust funds for all prisoners? My understanding is they do. They have trust funds. And then one of the issues with respect to the trust funds is whether or not the inmates are entitled to the interest on those trust funds. And there's actually a circuit split on this issue right now. I don't believe this court has addressed that. So there's injury. These injuries are traceable to government policies, the second prong of the standing issue. If those policies change with respect to the interest and the telephone, well, the injury would go away. They're traceable to government policies and they can be redressed by this court if they found it in favor,  Now, I know this court affirmed part of his case, and the part we affirmed included his request for the trust fund financial report. Is that correct? I'm sorry, I didn't understand that. I know this court affirmed part of the case. And in affirming, did we not affirm the denial of his FOIA request for the financial records for the inmate trust funds? That is one of the issues that this court did say it affirmed, primarily affirmed. So we have not made that indication. I understand. So to the extent the government argues that he hasn't shown any injury because he first has to show that these funds were used in a certain way that adversely affected him, has our affirmance disenabled him from obtaining the information the government says he needs? In other words, the affirmation with respect to FOIA? Well, he was asking for these financial records, and that part of the case is gone. But the government's brief now says that he can't show standing unless he can show somehow that money used, money in the inmate trust fund was misused. And so my question is, how is he able to do that? Does he file another request? Well, I think the government has created the wrong principle. I don't think to establish standing, he needs to show that. It would be nice if he had that information. But I think the question, all he needs to show is that he is not receiving the interest on the trust fund account. Well, they cite a Sixth Circuit case, Washington v. Reno. Right. So that's what I was alluding to. I think the issue here is simply at this stage whether or not he has shown that the interest on those accounts is being taken from him as a deprivation of his profits. Is that where his royalty check was deposited, do you know, in his inmate trust fund? Presumably that's where it would have gone, in the inmate trust fund account. Thank you. Why don't we hear from Apoli, and then we'll give you a couple of minutes in response. Good morning. Good morning. May it please the Court, my name is Kenneth Adebanaja on behalf of the government. Your Honor, the district court's ruling should be affirmed because they are based on facts and the record, and this circuit and other controlling rules. Specifically, with regard to the interest, retention of interest claim, and the failure to exhaust administrative remedies, the district court specifically said that Mr. DeBrew was both untimely, and he failed to attach the BP-10. How could he have attached that? What more could he have done? Normally when we talk about failure of exhaustion, there are steps that someone can take, and they fail to do so. Now just tell me what he could have done differently than he did. The district court specifically addressed that, and the district court said that he could have obtained a staff certification, that his inability to meet the time requirement and or add the BP-10 was not his own fault. And the district court said that in the appellant's appendix at 297 and 298, also at the appendix at 205 and 206. What would that staff certification have looked like? I mean, he averred himself that he had taken these steps. Well, Your Honor, thanks for asking that question. At AA-210, there's not a specific staff certification, but it is a letter that DeBrew was able to obtain from a counselor at his institution that indicated that he had received some administrative remedy documents, I assume. So I assume that's what the document would look like. The letter that was given to him, the letter that denied his request, indicated that he could obtain the staff certification, and he didn't do that. And presumably, if he had done that, he would have- Did anybody mention that? He wrote all these letters. Pardon me, Your Honor? He wrote all these letters. Well, he didn't have to. He could have just gone. And I can't think of a better reason to get a staff certification than to say, when I was at that other place, I gave the BP-10s that I received back to the mail handler, and I expected to receive it, and I didn't. I couldn't think of a better excuse or any reason why- Is there law that requires that? Is that something that we've required of inmates before, that they get this so-called staff certification? No, it's not, but it's in the regulation that permits him to have an alternative means to, just like the regulation also has other provisions that deal with timeliness. In this case, if he wasn't able to comply with the time requirement, probably maybe because of a transfer or some other reason, he could obtain the staff certification. And he was specifically advised that he could do that, and he didn't. It's a little odd here, since the record is in- it's your record. It's the Bureau of Prisons' record. Actually- It's not? I believe that the staff certification or the letters that he received indicating that he could obtain the staff certification were in his motion for summary judgment. So, I'm- You agree these documents were in the possession of the Bureau of Prisons? I agree with your question. Do you agree that the documents he failed to attach were in the possession of the Bureau of Prisons? I would assume that the- probably the regional office, considering that that was where the denial would have come from, probably had it. But I don't know whether his specific institution would have had it. Well, so I'm clear. The document he failed to attach, do you agree that was a Bureau of Prisons document? Yes. All right. Thank you. Counsel, one more time. What would the staff certification certify? It's basically supposed to say that the untimeliness is not the inmate's fault. And how would the staff know that? I'm just wondering how this takes place. He goes to them and says the following events took place. The same thing that he said that we have before us now. He says that to someone on staff, and they make a judgment as to whether he's being truthful or not? Presumably that's how it works, but we don't know because he didn't try. What about in this case where initially the Bureau raised timeliness, but then in the last two go-rounds it did not? I believe that the VOP waived timeliness as to two specific claims only. I think the fire codes and inmate pay, I believe. And the timeliness issue still existed as to the other. I'm sorry, wait. As to which it was raised, by which? He was able to, even within the midst of this inability, difficulty that he might have experienced, or that he alleges he experienced, he was able to exhaust the inmate pay claim, and I believe there was a fire codes claim. Neither of those is in the current? Neither of those. And is the assumption that the regional director's denial, he received it when he requested it? I'm sorry, Your Honor? You say he was able to exhaust as to the fire codes and inmate pay. Correct. And is that because he received the regional director's denial and therefore was able to attach it? Correct, Your Honor. So some regional directors responded to his request and others didn't. I wouldn't say that, Your Honor. I would say that even if. It's just odd. Even if that were true. He's writing all these letters, including to the general counsel. Well, this could have been cured simply by him making an attempt. It's not incumbent upon him. Or it could have been cured by them answering his letter. Yes. It's not incumbent upon him to prejudge what the outcome of the process would be. Answer the letter. It's a simple thing. Inmate writes a letter. Answer the letter. I presume that the reason. The staff certification. I just don't know what it means. Anyway. There's an example of a document that DeBrew was able to obtain, and that's at AA-210. It's not a staff certification, but it's certainly the result of a memorial of a conversation he had with some counselor about obtaining some document. Do you agree with opposing counsel that DeBrew's complaint clearly asked for declaratory and injunctive relief? I wouldn't say clearly, Your Honor, but it appears that he did ask for. Right. So the sovereign immunity analysis of the district court on that regard is wrong. Right. It's correct with regard to money damages. But that's not what I asked. With regard to the equitable relief, it's wrong. Correct. Now, on the Bivens claim, he tried to amend his complaint, right, to allege that the individual officials were involved in the policy. He tried to amend his complaint to do that, correct? I don't know that he did that. Okay. With regard, so this is the result. Your brief, maybe I'm misreading this, but at 25-6, your brief says, I want to make sure I understand your, just this answer to Judge Griffith, you write, it now appears that because of the district court's dismissal, he has backtracked, DeBrew has backtracked, and is now arguing for the first time that he sought injunctive relief under the APA. You've just abandoned that proposition, right? To the extent that he sought equitable relief, he didn't mention the APA. I believe that was raised specifically. Okay. So the emphasis on that sentence is under the APA. That's what I'm saying. Declaratory and injunctive relief, you're saying, but not under the APA, is that? I'm saying he could obtain equitable relief under the APA, which he didn't agree, but that amicus raised. And there's a case that addresses that issue, questions that amicus raised, that are raised for the first time by amicus, and that case is Elliott v. Department of Agriculture. That's at 596 S.E.B. 842. DeBrew didn't be. . . But I think back to Judge Griffith's question, that's not the reason that the district court ruled. The reason that the district court ruled. . . District court said sovereign immunity. For money damages, correct. But dismissed without entirely. . . It didn't keep alive the claim for injunctive. . . No, it did not. Okay. You acknowledge that was an error? No. The court didn't deal with the 408 issue from an equitable plaintiff. . . DeBrew's request for equitable relief. In which he says he seeks issue of preliminary injunction, et cetera, issue of declaratory judgment, et cetera, issue of declaratory judgment. The 408 violates the First Amendment itself. Correct. And I will add, though, that DeBrew has. . . DeBrew did. . . DeBrew has raised both of those issues before the Third and the Fourth Circuit. And the Third Circuit said that in the discussion about the website. . . The Third Circuit said. . . I believe on remand, the Western District said that DeBrew had. . . Mail and website claims had been vacated against him. Because I think there was an issue of. . . Whether there were telephone records to substantiate the claim that he was. . . Quote, unquote, conducting a business. And on remand, those telephone records weren't located. So, that charge was vacated. So, to the extent that he raised the website claim. . . And the phone. . . That he was asked to remove the website. It's in that. . . That case indicates that those claims. . . That that disciplinary. . . So, I tried to follow up. . . And find out what this Code 408 is. The Code 408 doesn't even exist anymore. I know. I know, but the response he received. . . Referred him to a Federal Register site. Which I looked at. . . That doesn't tell you anything. And then when I go to 334. . . That doesn't tell me anything either. In other words. . . I understand what operating a business is. But if I'm an author. . . And I'm talking to my agent. . . And my agent gets my book published. . . And then I get a royalty check. . . Is that what the Bureau of Prisons encompasses to be operating a business? That's what I was trying to find out. And I couldn't find any guidance on that. I think there was. . . And I think that's what he asked for. I think there was some issue about that. Because the BOP also has a policy that allows inmates to write manuscripts. And so there was an issue. That might have been one of the reasons why the claim was vacated. Why the disciplinary violation was vacated. Because. . . So we ought to let the district court figure out what the status of this 408 matter is? It seems to be a moving target here. Well, no. Because this court has already decided that 408 is constitutional in Berry v. Hoffsauer. But does it apply to here? To when you're dealing with an agent? You've written a book and you're dealing with an agent? Is that operating a business? Under 408. Well, right now, the regulation 334 says that you can operate a business, but you have to obtain staff authorization. So 408 doesn't exist anymore. Which, based on what I've already said, this claim may very well be moved. It's not moved unless the discipline is revoked. Yes. Well, the discipline for the website and telephone has been. . . Okay, but now with regard to the claim on operating a business because he received a royalty, he has a demerit or something in his file. And it hasn't been, as far as we know, it hasn't been removed. As far as I know of that, I haven't seen anything in the records or in any other cases that DeBrew has filed that claim. And if it had been, you would have said it's now moved and you would probably be right. Well, but it could also be moved because 408 doesn't exist anymore. Perhaps DeBrew should attempt to get staff authorization to conduct business under 334, and then he would have a. . . This discipline was applied under an unconstitutional standard, and the answer is the discipline has been revoked. That will presumably end the matter. But that discussion hasn't taken place. Not that I know of. I mean, to say he has to now go and file another complaint saying, in view of the change in the code, you should remove the discipline. That could vary. That may be a process that leads to him actually obtaining authorization. That may be one way to do it, but if he has a well-plugged complaint here, he doesn't have to go another route because you've changed your system. Also, I looked at 334. It doesn't tell me anything about staff authorization, does it? My reading of it was that it says that with staff authorization. And so what do I need to do? Who do I? . . Any staff? I mean, I'm an inmate, and I can hear the argument now, you didn't go to the right staff or whatever. I mean, where do you find out precisely what you need to do? You have staff who certifies that, right? Yes. Possibly. The institutions have counselors, and the counselor's job is to sort of answer these questions. And if the counselor can't answer these questions, then perhaps they escalate it to somebody who can. And ultimately, just like we don't know what would have happened if he had attempted to obtain a staff certification instead of prejudging the process, we don't know. No, but you see, I think at least my concern is that you're setting up a system that's full of failure because either you didn't get the right staff or you don't have a document saying that this staff person said you had to go to somebody else. I mean, you can just see. 334 is three, four years old now, I think. I think it's 2011. It may be. I couldn't find anything about it. That's all I'm saying. I actually found it in the program statements on the VOP's website, I believe. Right. Does it tell me exactly what kind of person I need to go to, what rank, what I need to get from him? Is there a form? Is there a letter? I think that the counselors could probably answer those questions, but we just don't know. That's right. Yes, we don't know. Because he didn't try with regards to staff certification. Okay. Anything further? Can I ask you to respond to your friend's argument that with respect to the FOIA request for the Code 408 documents, that the response was inadequate because it only identified the people involved in the search and didn't identify the scope and method of search? What is your response to that? Actually, what the record shows is that Mr. Moore prepared the declaration, but he didn't conduct the search. The person who conducted the search has left the VOP. And what basically Mr. Moore says is that when the FOIA requests come in, they review them, they determine whether a response to the FOIA request can be answered by them or has to be sent to some other department of the VOP. He, in his affidavit, he says that the determination was probably made, likely made that the program statement was the response, was the appropriate response. But do you disagree with your friend's characterization that we don't have a sense of the scope of the search? We know who was involved in it, but there's no description of what sort of search was undertaken. That's sort of the basic that we require, isn't it? By regression, Mr. Moore stated that the search would have included terms like conducting a business, quote-unquote, conducting a business, unquote, or quote-unquote, code for it, unquote. And that's at AA320. And in addition to that, he has a third affidavit that says that not only did, that VOP believes that the program statement was the appropriate response because the request was, quote, all documentation for making, conducting, a business params for a prohibited act. And it was just like the district court held that under those circumstances, it was reasonable for the VOP to say that the program statement that makes for a prohibited act is this program, and that that would have been a sufficient response. But the third Moore declaration also indicates that beyond that, two separate subject matter experts were consulted. And one said, all I found was a program statement, and the other said, all I found were public documents. So I believe that the government's position is that the district court was correct. All right. Anything further? And for that, I would just cite the case Truitt v. Department of State, 897-SPP-540. Just with regard to the telephone records FOIA, the VOP didn't retain transcripts of the conversation, and there's no requirement for VOP to produce those records, and I think the Supreme Court said that in Kissinger v. Reporters Committee. And what about the statement that is in the pro sabre about if he had been in trouble, they just would have reprinted the recording of the telephone conversation? Well, what we know from the record is that the tapes didn't exist anymore, correct? And that's also mentioned in the third circuit for the Western District case that that was probably one of the reasons why the FOIA claim for Web Center wasn't brought up. And can you just – do you have in your notes where it is in the record that it says the tapes were destroyed? So you couldn't reprint the call? It's in the second Mora declaration. Oh, sorry, the first Mora declaration. Okay. I'm sorry, I don't have it. No, that's good enough. All right, thank you. Thank you. All right, Amicus. Thank you, Your Honor. It was remarkable to hear the government use the language he didn't try to describe Mr. DeBruyne's actions, given how hard in fact he did try to follow all of the procedures that are laid out by the Administrative Remedies Program. Well, in fairness, counsel said he didn't try the right way and there was another procedure there he could have tried. And he was told about it. Well, I don't know that he was told about it. What's clear is that – Well, you heard counsel. Well, it seems to me the government is trying to impose obligations on Mr. DeBruyne that are not set forth in the Administrative Remedies Program. And that is not right. The government cannot post hoc statements – What are the obligations set forth in the Administrative Remedies Program? You have to go through four levels of review. Informal resolution with a staff member, a letter to the warden, an appeal to the warden on the right form, and then an appeal to the general counsel once that's done, and finally to the general counsel stating the basis of the appeal and attaching the response from the prior, you know, the lower levels. And there's nothing in those policies that describes staff certification? I think there is. I was looking through that. I think there is at some point a discussion about whether the opportunity to do staff verification with respect to timeliness, but not with respect to the failure to attach or the inability to attach the regional director's response. And it was remarkable to hear the government say, raise the timeliness issue. I think they actually conflated the two. They said that the staff verification applies to both. I think that's wrong. It only applies to the timeliness issue. And that's the only one the district court mentioned was the staff verification of the form. But again, the VOP did not find that to be a problem. Perhaps Mr. DeBrew, though he said how was he supposed to get staff verification of a non-event, but even if he was supposed to do that, the VOP did not tell him to do that after he pleaded the circumstances out of his control. Nor did they say to him, you should get staff verification that you didn't receive these forms. All they said to him was, get the forms. So naturally he tried to get the forms. He tried very hard to get the forms. In evaluating exhaustion, the court should only look at the procedures that were required of him and whether they were available. Could I ask you to reply to your friend's argument about the 408 search and its adequacy? You heard his response to my question. Your reply would be? But he didn't answer the question, essentially. I understood it. He explained that someone didn't work there or there was some reason why they didn't do it a different way. But both in his brief and in his answer to the court, he did not say, nor could he say, because it's pretty clear from the affidavit itself, that they used the search terms, that they actually listed the search terms, used the type of search, or how they went about doing it, whether they searched in the right materials. Okay. What about the argument that the timeliness was waived only to some of his claims, not all of them? That's incorrect as a matter of the record. The two that are at issue here, which is interest on trust fund accounts and also telephone prices and markups, the record is clear, and I can find the site in a second, that in both of those, though they did say that they were untimely the first go-around, that he refiled it, they did not say that for that. The government also makes the argument that he had successfully exhausted inmate pay and therefore, I guess the argument goes he could have or should have done it for these. But that's a non-sequitur because there's really two possibilities. One is that he actually got the regional directorate response for inmate pay, and that's why he was able to do it for the inmate pay claim, whereas he couldn't do it for this one. Or the other possibility is that the DOP goofed, and they didn't realize that he didn't attach the regional director's response with that one. Either way, it doesn't prove that he failed to exhaust in respect to this one. When I look at the record, it's clear that Mr. DeBruyne followed the exact same steps with respect to inmate pay as he did for the two that are at issue here. I think my time is up. Unless there are any other questions or the court would like me to continue arguing. All right. If you don't have anything further, thank you. Counsel, you were appointed by the court, and we appreciate your assistance and thank you. Thank you.
judges: Rogers, Griffith, Ginsburg